UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LORENZO D. KYLES,

Petitioner,

Case No. 20-cv-77-pp

v.

CHRIS BUESGEN,[1]

Respondent.

---

**ORDER GRANTING PETITIONER'S MOTION TO WITHDRAW PETITION FOR PERMISSION TO APPEAL (DKT. NO. 7), SUSTAINING PETITIONER'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DKT. NOS. 6, 12), DECLINING TO FOLLOW MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS PETITION (DKT. NO. 3), SCREENING PETITION AND REQUIRING RESPONSE**

---

## I. Procedural History of 2020 Petition

On January 16, 2020, the petitioner—an inmate at the Stanley Correctional Institution who, at the time, was representing himself—filed a petition for a writ of *habeas corpus* under 28 U.S.C. §2254, challenging the constitutionality of events that occurred in his 2002 prosecution and conviction in Milwaukee County Circuit Court for first-degree reckless homicide while armed with a dangerous weapon. Dkt. No. 1. Id. at 1-2. The petition was assigned to Magistrate Judge Nancy Joseph, who screened it as required under

[1] The petition named Reed Richardson as the respondent. Dkt. No. 1. Rule 2(a) of the Rules Governing §2254 Cases says that if the petitioner is in custody under a state-court judgment, "the petition must name as respondent the state officer who has custody." The current warden of the Stanley Correctional Institution is Chris Buesgen, so the court has modified the caption accordingly.

Rule 4 of the Rules Governing §2254 Cases. Dkt. No. 3. Judge Joseph noticed that the petition indicated that in 2005, the petitioner had filed a previous §2254 petition, which was dismissed as untimely. Id. at 1-2. Because the 2020 petition challenged the same conviction as the 2005 petition, Judge Joseph concluded that the 2020 petition was an unauthorized second or successive petition which she had no jurisdiction to consider under 28 U.S.C. §2244(b)(3)(A). Id. at 3. She recommended that this court dismiss the petition.[2] Id. at 4.

On February 6, 2020, the court received from the petitioner a motion to appoint counsel. Dkt. No. 5. He attached to the motion a three-page letter from his former lawyer, Rob Henak, an experienced *habeas* practitioner, explaining in detail why Henak believed that Magistrate Judge Joseph's ruling was erroneous (although understandably so). Dkt. No. 5-1. A few days later, the court received from the plaintiff a motion asking the court to stay any ruling on Judge Joseph's recommendation so that he could go to the Seventh Circuit to seek a ruling on whether this petition constituted a "second or successive" petition. Dkt. No. 6. The same day, the court received from the petitioner a

[2] The clerk's office assigned the case to Magistrate Judge Joseph. Magistrate judges may order the entry of judgment in a nonjury civil matter—such as a *habeas* petition under 28 U.S.C. §2254—only with the consent of all parties. 28 U.S.C. §636(c)(1). Because Judge Joseph believed the case should be dismissed, which would require entry of judgment, and because the respondent had not had the opportunity to consent to her authority to do so, she recommended that this Article III judge dismiss the petition and enter judgment. Dkt. No. 3 at 1 n.1.

motion for permission to appeal under Federal Rule of Appellate Procedure 5. Dkt. No. 7.

This court agreed with the petitioner that he needed an experienced lawyer to help him find out whether the 2020 petition constituted an unauthorized "second or successive" petition. Dkt. No. 9. The court asked Federal Defender Services if it would be willing to provide counsel; FDS agreed, and the court appointed Attorney Shelley Fite to assist the petitioner. Id. at 2. It also agreed to defer ruling on the petitioner's request for leave to appeal, given that Attorney Fite might conclude that appeal was not appropriate. Id.

On June 11, 2020, the court received a letter from Attorney Fite, asking the court to give her fourteen days or so to file an objection to Judge Joseph's recommendation. Dkt. No. 11. The court regrets that it did not respond to that letter; because it was not filed as a motion, the court missed it on the docket. But ten days later, Attorney Fite filed the objection. Dkt. No. 12. She indicated that the petitioner was withdrawing his request to appeal. Id. at 7. She also argued that while the 2020 petition is the second in time, it is not a second or successive petition that requires authorization from the Seventh Circuit before the district court may consider it.

## II. Litigation History

On November 12, 2002, the petitioner pled guilty in Milwaukee County Circuit Court to first-degree reckless homicide by use of a dangerous weapon and was sentenced to forty years' imprisonment. Dkt. No. 1-2 at 41. The petitioner did not file a notice of intent to seek post-conviction relief within

twenty days of his sentencing. Id. The petitioner, however, filed a state *habeas* petition with the Wisconsin Court of Appeals under the procedure outlined in Wisconsin v. Knight, 168 Wis.2d 509, 522 (1992), asserting that he was denied his right to appellate counsel because his lawyer failed to file the notice of intent to seek post-conviction relief. Dkt. No. 102 at 14. The Court of Appeals told the petitioner that he was in the wrong court; it said that he needed to make that argument to the *trial* court and dismissed the Knight petition on January 28, 2004. Id. at 15.

The petitioner did as instructed and on February 18, 2004, filed a motion for postconviction relief, arguing that his trial counsel failed to preserve his appellate rights. Id. at 16. On March 10, 2004, the circuit court denied that petition. Id. at 17. The court noted that at sentencing, the petitioner had marked the box on the notice form indicating that he was undecided about whether to seek postconviction relief. Id. at 16. Because the petitioner did not allege to the circuit court that within the twenty-day period he had told his lawyer he wanted to appeal, the circuit court denied his petition. Id. at 16-17. The petitioner appealed, and the Wisconsin Court of Appeals affirmed on December 14, 2004. Id. at 18-20. The Wisconsin Supreme Court denied the petition for review on February 9, 2005. Id. at 21.

On April 5, 2005, the petitioner filed in the Eastern District of Wisconsin a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging the 2002 conviction. See Kyles v. Litscher, Case No. 05-cv-385, dkt. no. 1 (E.D. Wis. Apr. 5, 2005); see also Dkt. No. 1-2 at 22. The petition asserted two

grounds for relief: first, that the petitioner's plea in the 2002 criminal case was not knowing and voluntary because his lawyer had not explained the impact Wisconsin's truth-in-sentencing law would have on the amount of time the petitioner would be required to serve, and second, that his trial attorney failed to timely file a notice of intent to seek postconviction relief. Kyles v. Litscher, Case No. 05-cv-585, dkt. no. 1 at 6-7. The second ground raised the same claim the petitioner had tried to litigate in state court—the claim that the Wisconsin Court of Appeals had told him he had to raise with the trial court and the claim that the trial court dismissed.

Magistrate Judge Aaron Goodstein found the petition untimely, because he concluded that the petitioner's one-year *habeas* limitations period began running on December 2, 2002, "when twenty days passed from the date of his sentencing without [the petitioner] filing a notice of appeal." Dkt. No. 1-2 at 24. Even excluding all the time during which the petitioner's Knight and circuit court *habeas* petitions had been pending, Judge Goodstein found that 385 days had passed between December 2, 2002 and April 5, 2005, the date the petitioner had filed his federal *habeas* petition. Id. Accordingly, on February 12, 2008, Judge Goodstein dismissed the petition as untimely under 28 U.S.C. §2244(d)(1).[3] Id. at 28. On June 10, 2008, the Seventh Circuit denied the petitioner's request for a certificate of appealability, dkt. no. 1-2 at 33, and on

---

[3] Judge Goodstein also indicated that had the petition been timely filed, he would have denied it on the merits. Id. at 4-7.

October 20, 2008, the United States Supreme Court denied his petition for a writ of *certiorari*, dkt. no. 1-2 at 34.

In December 2008, the petitioner asked the Wisconsin Court of Appeals to extend the deadline for him to file a notice of intent to seek postconviction relief. Id. at 37. The appellate court denied the motion. Id. In February 2012, he filed another Knight petition with the court of appeals; the court of appeals denied that petition on May 9, 2012. Id. at 38.

But when the petitioner sought review of *that* decision in the Wisconsin Supreme Court, he was successful. The Wisconsin Supreme Court concluded that if, in fact, the reason the petitioner did not timely appeal his conviction and sentence was due to ineffective assistance of his trial counsel, the remedy would be to extend the time for him to appeal. Id. at 52. The court found that, contrary to the appellate court's conclusion, the court of appeals, not the circuit court, was the court with the authority to extend that time. Id. at 53. The court concluded that the Knight petition the petitioner had filed with the Wisconsin Court of Appeals had alleged sufficient facts which, if true, entitled him to relief. Id. at 59. The Wisconsin Supreme Court remanded the case to the court of appeals to either appoint a referee or refer the case to the circuit court for an evidentiary hearing on whether ineffective assistance of counsel was the reason the petitioner did not timely appeal. Id. at 63.

The court of appeals elected the second option and remanded the case to the circuit court for an evidentiary hearing. Dkt. No. 7-1 at 5. The result was that on December 9, 2014, the petitioner (represented by Attorney Rob Henak)

and the state filed a joint motion to extend the deadline for the petitioner to file his notice of intent to seek post-conviction relief to December 4, 2014. Id. at 5-6. Attorney Henak anticipated that the court of appeals would grant the joint motion and filed the notice of intent on December 4, 2014. Id. at 6 n.1; State v. Kyles, 2002CFF002732 (Milwaukee County Circuit Court), accessible at https://wcca.wicourts.gov. After various procedural delays, the court of appeals affirmed the petitioner's conviction on November 20, 2018, dkt. no. 1-2 at 3-12, and the Wisconsin Supreme Court denied the petition for review on February 15, 2019, dkt. no. 1-2 at 13. The petitioner filed this current *habeas* petition less than a year later.

## III. Petition for Permission to Appeal Pursuant to FRAP Rule 5 (Dkt. No. 7)

The petitioner has asked to withdraw his petition for permission to file an interlocutory appeal. Dkt. No. 12 at 7. The court will grant that request and deny the motion as moot.

## IV. Objection to Magistrate Judge's Report and Recommendation (Dkt. Nos. 6, 12)

### A. Standard of Review

The Federal Rules of Civil Procedure apply to *habeas* petitions filed under 28 U.S.C. §2254. See Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts. Under Fed. R. Civ. P. 72(b)(2), a dissatisfied party has fourteen days from the date the magistrate judge issues the recommendation to file "specific written objections." The petitioner must specify "each issue for which review is sought," but need not specify "the factual or

legal basis of the objection." Johnson v. Zema Sys. Corp., 170 F.3d 734, 741 (7th Cir. 1999). The district court must conduct a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." Id. at 739. "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." Id. (citations omitted).

B. Analysis

1. *Timeliness of Objection*

Judge Joseph issued her report and recommendation on January 27, 2020. Dkt. No. 3. Ten days later, on February 6, 2020, the court received the petitioner's *pro se* motion to appoint counsel (dkt. no. 5), and thirteen days later, on February 10, 2020, it received his Written Objection and motion to Stay the Ruling on Petitioner's Written Objection (dkt. no. 6).

2. *Substance of Objection*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court is not required to entertain a petition for writ of *habeas corpus* if it appears that the petitioner's detention previously has been challenged on a prior writ of *habeas corpus*. 28 U.S.C. §2244(a). The statute provides that a petitioner may challenge his detention for a second time only if he receives authorization from the court of appeals to file a second or successive petition in the district court. 28 U.S.C. §2244(b)(3)(A). However, "[n]ot every petition counts for purposes of §2244(b), so in some cases later petitions are not considered second or successive under §2244(b) and can be

filed without permission from the court of appeals." Altman v. Benik, 337 F.3d 764, 766 (7th Cir. 2003).

In her order recommending that this court dismiss the 2020 petition as an unauthorized second or successive petition, Judge Joseph acknowledged that "not every petition counts for purposes of §2244(b)," providing examples such as prior petitions being dismiss for technical or procedural deficiencies (being filed in the wrong district or failing to pay the filing fee). Dkt. No. 3 at 2. She explained, however, that a petition that is "resolved in a way that satisfies the petitioner's one 'full and fair opportunity to raise a federal collateral attack' does count for purposes of determining whether a habeas petition is success because the petitioner is 'incapable of curing the defect underlying the district court's judgment.'" Id. (citing Altman, 337 F.3d at 766). She compared the petitioner's situation to the situation of the petitioner in Altman. Id. at 2-3.

The petitioner in Altman pled guilty in 1993 to attempted first degree intentional homicide and three counts of reckless endangerment. Altman, 337 F.3d at 765. Altman filed his first *habeas* petition in federal district court in 1997, following an unsuccessful state appeal. Id. He voluntarily dismissed this petition so that he could exhaust his state remedies. Id. In March 2000, Altman filed a new §2254 petition in federal district court. Id. The district judge dismissed the petition as untimely and denied the request for a certificate of appealability. Id. The Seventh Circuit observed that after the March 2000 *habeas* petition proved unsuccessful, Altman asked for permission to file a successive §2254 petition. Id. The court noted that it had not yet decided

whether a petition dismissed as untimely counted for purposes of §2244(b) and set out to answer that question. Id. at 766.

The Altman court said that, "[f]or purposes of §2244(b), we do not count previous petitions that were dismissed for technical or procedural deficiencies that the petitioner can cure before refiling." Id. It listed examples of petitions that would *not* count, such as a petition dismissed because the petitioner filed in the wrong district, citing Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999); a petition dismissed because of failure to pay the filing fee, citing Benton v. Washington, 106 F.3d 162, 165 (7th Cir. 1996); and a petition dismissed as premature, citing Slack v. McDaniel, 529 U.S. 473, 485-86 (2000). The Altman court noted that "in these cases the petitioners are able to rectify the problems and refile their petitions for merits determination of the substantive claims." Id.

In contrast, the Seventh Circuit listed examples of petitions that *would* count for purposes of §2244(b), such as a petition denied on its merits, citing In re Page, 179 F.3d 1024, 1025 (7th Cir. 1999); a petition voluntarily dismissed in the face of an imminent loss, citing Potts v. United States, 210 F.3d 770, 771 (7th Cir. 2000); and petitions denied on grounds of procedural default, citing In re Cook, 215 F.3d 606, 608 (6th Cir. 2000). The Altman court found that these cases would qualify under §2244(b) "because the petitioner is incapable of curing the defect underlying the district court's judgment." Id.

Given those distinctions, the court concluded that

> [i]n this case, Mr. Altman filed his prior petition after the one-year statute of limitations expired, so the district court dismissed it as untimely. Mr. Altman can do nothing to correct his late filing, and if he refiled his petition the district court would again deny it as

> untimely. He received his one opportunity to litigate a federal collateral attack, but he failed to do it in a timely manner. His prior petition therefore counts and he needs this court's permission to file another petition.

Id. The Seventh Circuit denied Altman permission to file a second or successive petition. Id. at 766-67.

Judge Joseph concluded that the decision in Altman controlled her decision in this case, that she had no jurisdiction to consider the petition and that she had no choice but to recommend that this court dismiss it. Dkt. No. 3 at 3. If one did not know the history of the petitioner's state litigation—which Judge Joseph may not have—her conclusion would look correct. The petitioner did not file a notice of intent to seek postconviction relief; had he not received an extension of the deadline for filing that notice, his one-year limitation period for filing his 2005 §2254 petition would have begun to run twenty days after his November 12, 2002 sentencing—that is, on December 2, 2002—and his April 4, 2005 petition would have been untimely. In Altman, the Seventh Circuit stated that "if [Altman] refiled his petition the district court would again deny it as untimely." Id. at 766-67. Similarly, if the petitioner had tried to re-file the 2005 *habeas* petition any time between the date Judge Goodstein dismissed it and December 2014, when the court of appeals reinstated his appeal rights, the district court again would have dismissed it as untimely.

But by the time the petitioner filed the 2020 petition, he *could* do something to correct his "late" filing. Indeed, he *had* done something to correct his late filing—he had received an extension of the deadline to file his notice of intent to seek postconviction relief and had filed that notice. So he went from

being in the second Altman category—the category of petitioners who could do nothing to cure the defect underlying Judge Goodstein's judgment—to the first Altman category—the category of petitioners who could cure before refiling. Judge Joseph was correct that Altman controls, but because she was not aware of the fact that the petitioner had received an extension of the deadline for filing his notice of intent to seek postconviction relief, she was incorrect about which Altman category included the petitioner.

The petitioner's argument is a bit different. First, he says that the 2020 petition is timely because he filed it after completing the direct appeal that he didn't have the chance to file until December 2014. Dkt. No. 12 at 8. The court does not disagree, and Judge Joseph did not conclude otherwise.

Next, the petitioner argues that his 2005 petition before Judge Goodstein was an attempt to get his appeal rights reinstated. Id. He asserts that under a 1998 Seventh Circuit decision, Shepeck v. United States, 150 F.3d 800 (7th Cir. 1998), when the first-in-time petition seeks reinstatement of appeal rights, and appeal rights subsequently *are* reinstated, the first-in-time petition doesn't "count," as the Altman court put it, for the purpose of determining whether the second-in-time petition is second or successive. Id.

Shepeck's federal trial attorney did what the petitioner argued his state trial attorney did—abandoned Shepeck after sentencing without complying with Shepeck's request that he file a notice of appeal. Shepeck, 150 F.3d at 800. Shepeck filed a motion to vacate, correct or set aside sentence under 28 U.S.C. §2255, asking that the judgment be vacated and reinstated so that he

could appeal. Id. The district court resentenced him, Shepeck appealed, his attorney filed a no-merit brief and the Seventh Circuit dismissed the appeal. Id. Shepeck then sought permission to file a second §2255 motion because he wanted to argue that his appellate attorney was ineffective for filing the no-merit brief. Id. The Seventh Circuit concluded that Shepeck did not need its approval to file the second-in-time petition, because the arguments he wanted to present in the second-in-time petition "were unripe until he was resentenced after his first § 2255 petition." Id. at 801. Citing its ruling in Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994), the Shepeck court stated that "a prisoner may obtain the equivalent of a direct appeal by showing that he was deserted by his lawyer," which implies that "the new sentence" the prisoner receives after that direct appeal "puts the defendant in the same *legal* position as a person taking an appeal from the original judgment." Id. Such a person, the Seventh Circuit held, was "entitled to prosecute one collateral attack" on that judgment. Id. In Shepeck's case, that meant that on order granting his §2255 petition seeking reinstatement of his appeal rights "reset[] to zero the counter of collateral attacks pursued." Id.

The petitioner argues that while his procedural posture is different than Shepeck's, the same principle applies. Dkt. No. 12 at 12. He filed a petition before Judge Goodstein seeking, among other things, reinstatement of his appeal rights. Judge Goodstein denied that petition, but another court reinstated the petitioner's appeal rights, and he now seeks the one full and fair

opportunity he didn't receive in the 2005 petition to raise a federal collateral attack on his 2002 conviction. Id. at 12-13.

The petitioner's circumstances differ from Shepeck's in more significant ways than the petitioner discusses. In Shepeck's second-in-time petition, he sought to raise new errors that had occurred in the proceedings resulting from the grant of his first-in-time petition. As the Seventh Circuit said, his claim of ineffective assistance of *appellate* counsel was not ripe when he filed his first-in-time petition, because he had not yet appealed. He was seeking in the second-in-time petition to raise an alleged constitutional violation that arose after his first-in-time petition was granted. In contrast, the claim the petitioner seeks to raise in his second-in-time (2020) petition is not new and was not unripe when he filed his first-in-time petition in 2005. The 2020 petition asserts that the petitioner's trial lawyer failed to convey to him an earlier (August) plea offer that would have "restricted the state from requesting a specific sentence and preserved [the petitioner's] freedom to argue for less prison time with the opportunity to argue several mitigating factors," in contrast to a September plea offer that, the petitioner argues, was less beneficial to him. Dkt. No. 1 at 6-7. This claim was ripe when the petitioner filed his 2005 petition. So unlike Shepeck, the petitioner is not using a second-in-time petition to raise a claim that he could not have raised in the first-in-time petition.

That said, the Seventh Circuit reiterated in Shepeck a broader principle—that a person is entitled to one full collateral attack on his

conviction. While Judge Goodstein stated in his decision dismissing the 2005 petition that even if it had not been untimely, he would have denied the petition on substantive grounds, he based on that decision on his conclusion that the petitioner had not demonstrated that his trial counsel had denied his request to file the notice of intent to seek postconviction relief. That issue now has been resolved. Because the petitioner has cured the deficiency that caused Judge Goodstein to dismiss the first petition, he should now receive his one opportunity to mount a federal collateral attack on his conviction.

The court will sustain the petitioner's objection to Judge Joseph's report and recommendation and will not dismiss the petition.

## V. Rule 4 Screening

### A. Standard

Rule 4 of the Rules Governing §2254 Cases provides:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion or other response within a fixed time, or to take other action the judge may order.

A court allows a *habeas* petition to proceed unless it is clear that the petitioner is not entitled to relief in the district court. At the screening stage, the court expresses no view as to the merits of any of the petitioner's claims. Rather, the court reviews the petition and exhibits to determine whether the petitioner alleges he is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. §22554(a).

The court also considers whether the state prisoner has exhausted the remedies available in the state courts. 28 U.S.C. §2254(b)(1)(A). Finally, even if a petitioner has exhausted a claim, the district court may still be barred from considering the claim if the petitioner failed to raise the claim in the state's highest court in a timely fashion or in the manner prescribed by the state's procedural laws. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); Thomas v. McCaughtry, 201 F.3d 995, 1000 (7th Cir. 2000).

As noted above, the petitioner asserts that his trial counsel was ineffective because counsel filed to advise the petitioner of a favorable plea offer. At this early stage, the court cannot conclude that it is clear that the petitioner is not entitled to relief. This does not mean that the respondent is precluded from raising affirmative defenses such as failure to exhaust or procedural default, nor does it mean that the petitioner's claim has merit. It means that the petitioner has raised a claim for which a federal court could grant relief on collateral attack. The court will require the respondent to address the petition and will return the case to Judge Joseph for further proceedings.

## VI. Conclusion

The court **DENIES AS MOOT** the Petition for Permission to Appeal Pursuant to FRAP Rule 5. Dkt. No. 7.

The court **SUSTAINS** the petitioner's objections to Judge Joseph's report and recommendation. Dkt. Nos. 6, 12.

The court **DECLINES** to follow Judge Joseph's recommendation, and **DECLINES** to dismiss the petition as an unauthorized second or successive petition. Dkt. No. 3.

The court **ORDERS** that within sixty days of the date of this order, the respondent shall answer or otherwise respond to the petition, complying with Rule 5 of the Rules Governing §2254 Cases, and showing cause, if any, why the writ should not issue.

The court **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the petitioner's claims:

(1) the petitioner has forty-five days after the respondent files the answer to file a brief in support of his petition;

(2) the respondent has forty-five days after the petitioner files his initial brief to file a brief in opposition;

(3) the petitioner has thirty days after the respondent files the opposition brief to file a reply brief, if he chooses to file such a brief.

If, instead of filing an answer, the respondent files a dispositive motion:

(1) the respondent must include a brief and other relevant materials in support of the motion;

(2) the petitioner then must file a brief in opposition to that motion within forty-five days of the date the respondent files the motion;

(3) the respondent has thirty days after the petitioner files his opposition brief to file a reply brief, if the respondent chooses to file such a brief.

The parties must submit their pleadings in time for the court to *receive* them by the stated deadlines.

Under Civil Local Rule 7(f), briefs in support of or in opposition to the *habeas* petition and any dispositive motions shall not exceed thirty pages, and reply briefs may not exceed fifteen pages—not counting any statements of fact, exhibits and affidavits. The court asks the parties to double-space any typed documents.

Under the Memorandum of Understanding between the Wisconsin Department of Justice (DOJ) and the U.S. District Court for the Eastern District of Wisconsin, the court will notify the DOJ (through the Criminal Appeals Unit Director and lead secretary) of this order via Notice of Electronic Filing (NEF). The DOJ will inform the court within twenty-one days of the date of the NEF whether it will accept service on behalf of the respondent (and, if not, the reason for not accepting service and the last known address of the respondent). The DOJ will provide the pleadings to the respondent on whose behalf it has agreed to accept service of process.

The court **ORDERS** that this case is **RETURNED** to Magistrate Judge Nancy Joseph for further proceedings.

Dated in Milwaukee, Wisconsin this 5th day of November, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**