UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LORENZO D. KYLES,**

      Petitioner,

v.                                                 Case No. 20-CV-77

**CHRISTOPHER BUESGEN,**

      Respondent.

---

### DECISION AND ORDER ON PETITIONER'S MOTION TO STAY AND HOLD CASE IN ABEYANCE

---

Lorenzo D. Kyles, who is currently incarcerated at the Stanley Correctional Institution, seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket # 1.) In his habeas petition, Kyles raises one ground for relief—ineffective assistance of trial counsel for failure to communicate an earlier plea offer. (Docket # 1.) Kyles now seeks leave to stay these proceedings and hold his petition in abeyance to allow him to return to state court to raise a claim of ineffective assistance of appellate counsel. (Docket # 33.) Kyles further requests leave to amend his habeas petition to include that claim once it is exhausted. (*Id.*) Kyles also moves to supplement the record and to seal portions of the proposed supplement. (Docket # 32.) For the reasons explained below, Kyles' motions are granted.

### BACKGROUND

Kyles pled guilty and was convicted on September 30, 2002 of first-degree reckless homicide – use of a dangerous weapon in Milwaukee County Circuit Court Case No. 02-CF-2732. (Judg. of Conviction, Answer, Ex. 1, Docket # 19-1.) His conviction stems from the May 17, 2002 shooting death of Darrell Stinson during a drug deal. (*State v. Kyles*, 2018AP296

(Wis. Ct. App. Nov. 20, 2018), Answer, Ex. 5, Docket # 19-5.) Kyles was charged with first-degree reckless homicide, including an enhancer for using a dangerous weapon, and with possession of a firearm by a felon. (*Id.* ¶ 4.) Both charges included a habitual criminality enhancer. (*Id.*)

The prosecutor and Kyles' trial counsel engaged in plea negotiations. In the first plea deal offered August 19, 2002, the State offered to dismiss the habitual criminal enhancer in exchange for a guilty plea to both the firearm possession charge as well as the first-degree reckless homicide charge with the dangerous weapon enhancer. (*Id.* ¶ 5.) The maximum sentence exposure for the reckless homicide charge with the weapon enhancer was sixty-five years (forty-five years of initial confinement and twenty years of extended supervision) and the maximum sentence for the felon in possession charge was five years (two years of initial confinement and three years of extended supervision). (*Id.*) The offer letter explained that the State would recommend a "substantial" length of time for initial confinement, leaving the exact length to the trial court's discretion. (*Id.*) The trial court would also determine whether the sentences would run concurrently or consecutively. (*Id.*) The offer was good until September 12, 2002. (*Id.*)

A second offer letter, dated September 13, 2002, referenced a counter proposal from Kyles' trial counsel, which was rejected. (*Id.* ¶ 6.) That letter described a new plea offer that differed from the August offer in that it offered to dismiss the habitual criminal enhancer for the reckless homicide charge, as well as the felon-in-possession charge. (*Id.*) Thus, the only remaining count against Kyles would be the first-degree reckless homicide charge with the dangerous weapon enhancer. (*Id.*) The letter also suggested that the State and defense jointly recommend a forty-one year sentence, consisting of thirty-three years of initial confinement

and eight years of extended supervision. (*Id.*) Kyles' ultimately entered his plea on the terms from the September offer and the trial court agreed with that recommendation, except that his length of initial confinement was reduced to thirty-two years. (*Id.* and n.2.)

Kyles moved for post-conviction relief on the basis that his trial counsel never conveyed to him the initial, August 19 plea offer. (*Id.* ¶ 7.) Kyles argued that he would have taken that initial offer had he known about it, because it allowed for his trial counsel to argue for lesser time. (*Id.*) Thus, he asserted that he was prejudiced by his trial counsel's deficient performance. (*Id.*) An evidentiary hearing was held on the motion in December 2017. (*Id.* ¶ 8.) The trial court described Kyles' case as "complicated," stating that it was "not entirely clear" which offer was better. (*Id.* ¶ 8.) The trial court concluded that Kyles had only presented a "theoretical possibility" of a lower sentence, which was insufficient to establish prejudice and denied the motion. (*Id.* ¶ 11.)

The court of appeals affirmed the trial court's decision. It found that the September offer had a definite, agreed upon sentence. (*Id.* ¶ 19.) Considering his maximum exposure was sixty-five years, under the August offer terms, the trial court could have imposed a longer sentence than the one presented in the joint recommendation. (*Id.*) Furthermore, the September offer dismissed the felon in possession charge, which decreased Kyles' prison exposure by five years. (*Id.*) Kyles argued that under the August deal, he could have presented several mitigating factors that could have resulted in a lower sentence than the joint recommendation in the September deal; specifically, acceptance of responsibility; the victim's family supported a more lenient sentence; the PSI suggested a sentence range of twenty-six to forty years; and the trial court could have imposed his sentence to run concurrently to a sentence resulting from a revocation proceeding in another case. (*Id.* ¶ 20.)

3

Case 2:20-cv-00077-NJ   Filed 01/06/22   Page 3 of 10   Document 36

The court of appeals determined that the trial court did weigh the aggravating factors against the mitigating factors Kyles articulated in coming to its sentencing decision. (*Id.* ¶ 21.) The court concluded that whether those mitigating factors would have had a positive impact on Kyles' sentence "had trial counsel been allowed to more zealously argue them at the sentencing hearing is merely a 'theoretical possibility,' which is not sufficient to establish prejudice." (*Id.* ¶ 22.) Kyles petitioned the Wisconsin Supreme Court for review, which was denied on February 12, 2019. (Answer, Ex. 8, Docket # 19-8.)

Kyles filed the instant habeas petition in this court on January 16, 2020. (Docket # 1.) Kyles, acting *pro se*, raised a single ground for relief in his petition—ineffective assistance of trial counsel. (*Id.*) The respondent answered on December 30, 2020. (Docket # 19.) After requesting several extensions to file his brief in support of the habeas petition, Kyles, now represented by counsel, filed a motion to stay the proceedings and hold the case in abeyance so that he can return to state court and raise an ineffective assistance of appellate counsel claim. (Docket # 33.) Kyles further requests that should the state court not grant his requested relief, when he returns to federal court, he be granted leave to amend his petition and treat the new claim as timely filed because it relates back to his existing claim. (*Id.* at 9.) Kyles also requests leave to supplement the record with additional documents in support of his motion to stay, and to seal a portion of the proposed supplement. (Docket # 32.) The respondent objects to both pending motions. (Docket # 34.)

## ANALYSIS

1. *Procedural Issue*

As an initial matter, Kyles' request to stay his petition and later amend to include an exhausted claim is procedurally backwards. Currently pending before me is a habeas petition

4

raising a single ground for relief for ineffective assistance of counsel (Docket # 1 at 6–7) that the respondent acknowledges is exhausted and not procedurally defaulted (Answer, ¶ 4). Kyles misunderstands the stay and abeyance procedure. A federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his state remedies. 28 U.S.C. § 2254(b)(1)(A). A claim is not considered exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The Supreme Court has interpreted the exhaustion requirement as imposing a rule of "total exhaustion," that is, that all claims in the petition must be exhausted before a federal court may rule on the petition. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). Ordinarily, a petition containing any unexhausted claims is dismissed. *Id*. However, after Congress imposed a one-year statute of limitations on the filing of federal habeas petitions with the enactment of Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the Court held that district courts have discretion to stay such a "mixed petition" and place it in abeyance, rather than dismiss it, in situations where dismissal is likely to terminate any federal review. *See Rhines v. Weber*, 544 U.S. 269, 274–78 (2005).

Here, however, Kyles' petition is not a mixed petition. It contains a single claim for ineffective assistance of trial counsel, and that claim has been exhausted. Thus, stay of these proceedings under *Rhines* is inappropriate. Although Kyles frames the request in terms of amending *after* exhausting in state court, his motion does request leave to amend his petition to include his ineffective assistance of appellate counsel claim. (Docket # 33 at 32–34.) "AEDPA allows every prisoner one full opportunity to seek collateral review. Part of that opportunity—part of every civil case—is an entitlement to add or drop issues while the litigation proceeds." *Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999). Furthermore,

5

pursuant to Fed. R. Civ. P. 15(a), "even after the defendant has filed an answer, and the plaintiff's absolute right to amend has lapsed, the court still should grant leave 'freely . . . when justice so requires.'" *Id.* (quoting Rule 15(a)).

The respondent does not specifically address Kyles' request to amend the petition to add the ineffective assistance of appellate counsel claim (Docket # 34), and under Rule 15, I find that Kyles should be allowed to file an amended habeas petition. However, to put Kyles' case on a procedurally correct course, he must file an amended petition raising the unexhausted claim and should file a new motion for a stay on the mixed petition. Because, however, the arguments for a stay have already been fully briefed, I will not require the parties to re-file the briefs and will address the merits of the motion here.

2.     *Merits of Motion to Stay and Hold in Abeyance*[1]

Again, Kyles requests leave to stay and hold this petition in abeyance while he returns to state court to exhaust his ineffective assistance of appellate counsel claim. A stay and abeyance is appropriate when there is good cause for the petitioner's failure to exhaust his claim first in state court, the exhausted claim is potentially meritorious, and the petitioner did not engage in intentionally dilatory tactics. *Rhines*, 544 U.S. at 277–78. Although the Supreme Court did not define "good cause" in *Rhines* and has only offered the suggestion that "a petitioner's reasonable confusion about whether a state filing would be timely" would constitute good cause, *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), the petitioner is required to offer some reason for his failure to exhaust, *Rhines*, 544 U.S. at 277–78.

---

[1] Kyles also moves to supplement the record with additional documents relevant to his motion to stay and to seal portions of the proposed supplement. (Docket # 32.) Respondent objects to the motion to supplement, arguing that the habeas record is restricted to those materials before the state court. (Docket # 34 at 3.) Kyles moves to supplement the record not to address the merits of his ineffective assistance of appellate counsel claim, but to support his motion to stay and hold the case in abeyance. Thus, Kyles' motion to supplement and seal is granted.

6

As an initial matter, Kyles argues that he "easily clears" the "good cause" hurdle as he has been diligently litigating his case for two decades and did not identify the basis of his ineffective assistance of appellate counsel claim until counsel was appointed for him in this case. (Docket # 33 at 31.) The respondent does not assert that Kyles lacks good cause for his failure to exhaust or that he engaged in dilatory tactics; rather, respondent argues that the stay and abeyance should be denied because Kyles' prospective claim lacks merit. (Docket # 34 at 4–8.)

Again, the *Rhines* Court held that even if a petitioner has good cause for his failure to exhaust, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." 544 U.S. at 277. Kyles argues that there is no procedural bar to raising his ineffective assistance of appellate counsel claim in state court, and that he is likely to succeed on his claim that appellate counsel's representation fell below Sixth Amendment standards. (Docket # 33 at 28–29.) The respondent counters that Kyles is merely trying to relitigate his postconviction motion with the benefit of hindsight and new counsel and that his unexhausted claim is meritless. (Docket # 34 at 6.)

But Kyles is not attempting to relitigate his postconviction motion. That issue— ineffective assistance of trial counsel—was fully exhausted in state court and is now pending before me in Kyles' current habeas petition. Ineffective assistance of appellate counsel is a different claim. The crux of Kyles' ineffective assistance of appellate counsel claim is that appellate counsel failed to conduct *any* investigation into trial counsel's actions and if he had, he would have come across two very strong pieces of evidence that could have drastically changed the sentencing court's determination—Stinson's toxicology report and comparative sentencing data. (Docket # 33 at 25–26.) Kyles argues that despite knowing that the medical

7

examiner produced a toxicology report indicating Stinson had cocaine in his system, appellate counsel failed to look into it. (*Id.* at 17.) Kyles argues that a reasonable attorney would have investigated this potential mitigating factor as cocaine is known to cause aggressive behavior, which would support Kyles' theory that Stinson lunged for Kyles' gun and Kyles fired in self-defense and contradict the presentence report which indicated that Kyles shot Stinson because he owed Kyles money. (*Id.* at 17–20.) Kyles further argues that had appellate counsel investigated, he would have realized that the comparative data showed the average sentence imposed in first-degree reckless homicide cases in Wisconsin around the time Kyles was sentenced was significantly lower—specifically, around eight years less—than what Kyles ultimately received. (*Id.* at 19–20.) It is Kyles' position that had appellate counsel made these arguments, he would have shown the requisite prejudice for trial counsel's failure to communicate the first plea offer. (*Id.* at 25–26.)

Respondent attempts to argue why, in his opinion, the court of appeals will ultimately reject Kyles' claim. Respondent argues that the new evidence Kyles puts forth is not a clearly stronger issue than the one raised by postconviction counsel. (Docket # 34 at 7.) But all that *Rhines* requires is that the unexhausted claim not be plainly meritless. *See, e.g.*, *Cruz v. Mitchell*, No. 13-CV-02792-JST, 2015 WL 78779, at *3 (N.D. Cal. Jan. 5, 2015) ("[P]etitioner has filed a lengthy petition containing allegations that are not vague, conclusory or patently frivolous. His claims are well-supported by specific averments and numerous exhibits. He has articulated cognizable constitutional claims supported by relevant legal authority, and has presented such evidence and offers of proof as are presently available to him."). Perhaps the state court will agree with respondent that appellate counsel's failure to raise these arguments did not amount to ineffective assistance. But perhaps it will not. However, I cannot say, on

8

Case 2:20-cv-00077-NJ   Filed 01/06/22   Page 8 of 10   Document 36

this record, that Kyles' unexhausted claim is plainly meritless. Under principles of comity, the state courts should be allowed to first address this claim.

For these reasons, I will allow Kyles to file an amended petition in which he raises both his exhausted and unexhausted claims. Kyles has until **January 18, 2022** to file an amended petition. Kyles is advised that the second amended petition will replace the prior petition and the second amended petition must be complete in itself without reference to the prior petition.

Upon filing his amended petition, I will stay his habeas proceedings and hold it in abeyance pending resolution of his state court proceedings. *Rhines* instructs that district courts should place reasonable time limits on a petitioner's trip to state court and back. 544 U.S. at 278. Thus, Kyles must file his motion for relief in state court within thirty (30) days after the stay is entered. Following the conclusion of his state court proceedings, Kyles must move to reopen this habeas case within thirty (30) days.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that petitioner's motion to amend the habeas petition (Docket # 33) is **GRANTED**. Petitioner must file an amended habeas petition consistent with this decision no later than **January 18, 2022**.

**IT IS FURTHER ORDERED** that petitioner's motion to stay the habeas petition and hold it in abeyance is **GRANTED**. Upon filing the amended habeas petition, the stay will be entered.

**IT IS FURTHER ORDERED** that upon the stay taking effect, this case will be closed for administrative purposes during the stay.

**IT IS FURTHER ORDERED** that petitioner must file his motion for relief in state court within thirty (30) days of entry of the stay. Following the conclusion of his state court proceedings, petitioner must move to reopen this habeas case within thirty (30) days. Failure to file relief in state court or file a motion to reopen in federal court as directed in this order may provide cause for this case to remain closed.

Dated at Milwaukee, Wisconsin this 6th day of January, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge